Receipt number AUSFCC-11370411

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**BID PROTEST**

DON ACQUISITION LLC,

     Plaintiff,

     v.

UNITED STATES,

     Defendant.

Case No. ___26-1039 C___

## COMPLAINT

Don Acquisition LLC makes the following bid protest against Defendant, the United States of America.

## NATURE OF THE ACTION

1. This protest involves Solicitation number 47QSMD20R0001 (the "Solicitation") issued by the U.S. General Services Administration ("GSA"). Don Acquisition LLC ("Don Acquisition") is protesting certain unlawful and unreasonable terms incorporated into the Solicitation through Refresh Modifications No. 0030 ("Refresh 30"), No. 0031 ("Refresh 31"), and No. 0032 ("Refresh 32").

2. These Refresh Modifications include a number of FAR clause deviations intended to enact portions of the "Revolutionary FAR Overhaul" ("RFO").  These modifications modified, added, or deleted dozens of FAR clauses and provisions — implementing what is intended to be a "revolutionary" set of changes to procurement policy, regulation, and procedures.

3.      Further, Refresh 31 implements changes to Transactional Data Reporting ("TDR") requirements that supersede existing non-TDR and Commercial Sales Practices reporting policies, requiring contractors to redesign their existing data systems to comply.

4.      Despite the significant effects and costs brought by these changes, these modifications were implemented without completion of the formal notice and comment process required by 41 U.S.C. § 1707 and the Paperwork Reduction Act, 44 U.S.C. § 3501 et seq.

5.      But for the improper agency action, Don Acquisition would have competed for award under the Solicitation. The Revolutionary FAR Overhaul's continuous efforts to redesign the federal procurement system have caused Don Acquisition considerable costs and delays — first, by forcing Don Acquisition to investigate the new compliance risks brought on by changed regulations, and second, by forcing Don Acquisition to re-design the products that it offers to represent "current" regulations that have not been properly promulgated and can change again at a moment's notice.

6.      Because the Revolutionary FAR Overhaul's changes have rendered participation in GSA MAS commercially impracticable, Don Acquisition brings this protest to challenge the unlawful agency action and to restore its ability to compete on terms consistent with applicable law and regulation.

## THE PARTIES

7.      Don Acquisition is a limited liability company organized under the laws of California. Its principal place of business is 11215 Poche Pt., San Diego, CA. Don Acquisition is a prospective offeror whose direct economic interest is affected by the terms of the solicitation.

8.      Defendant is the United States of America, for all purposes relevant hereto, acting by and through GSA, located in Washington, D.C.

## JURISDICTION AND STANDING

9. Throughout 2025, the FAR Council issued a set of draft FAR deviations and instructed agencies to use these deviations in lieu of the FAR's properly promulgated clauses and provisions. GSA adopted each of these draft deviations, and it directly implemented these changes to the GSA MAS through Refreshes 30, 31, and 32. Through Refresh 31, GSA also enacted mandatory TDR requirements that superseded existing optional reporting requirements.

10. These changes have not been properly promulgated in accordance with the formal notice and comment process required by 41 U.S.C. § 1707.

11. These sweeping changes outlined in the RFO have imposed a substantial compliance burden on Don Acquisition by requiring it to determine whether and how it would be affected by this attempt to redesign the federal procurement system without public comment. Don Acquisition has further been burdened by these changes because it seeks to offer professional development training for federal acquisition development personnel and has been forced to redesign its products to reflect these unlawful changes to the FAR.

12. In addition, Mandatory TDR Requirements imposed on the Solicitation by Refresh 31 would force Don Acquisition to incur the substantial and recurring costs of building and maintaining transaction-level reporting systems that its commercial business does not otherwise require.

13. Don Acquisition would have already submitted a bid in response to the solicitation but for these improperly promulgated FAR deviations and Mandatory TDR requirements. Don Acquisition intends, and remains ready, to submit a conforming offer under the Solicitation. Don Acquisition's prior performance of solicited work confirms its ability to compete for the award.

14.    Don Acquisition's incurred costs and substantial delays flow directly from the improper issuance of changes to procurement policy and regulation through FAR deviations and Refreshes and would be redressed by an order enjoining their enforcement or requiring GSA to reissue the Solicitation in conformance with law.

15.    Because the MAS Solicitation has no closing date, Don Acquisition's pre-award protest is timely submitted prior to the close of bidding.

16.    This Court has jurisdiction over the subject matter of this Bid Protest pursuant to the Tucker Act, as amended by the Administrative Dispute Resolution Act of 1996, codified at 28 U.S.C. § 1491(b)(1).

17.    Don Acquisition has standing as an interested party because it is a prospective offeror possessing a direct economic interest in the solicitation.

## FACTUAL BACKGROUND

*Revolutionary FAR Overhaul Requirements*

18.    On April 15, 2025, President Donald Trump issued Executive Order 14275, "Restoring Common Sense to Federal Procurement." This executive order directed the Administrator of the Office of Federal Public Procurement Policy, along with the FAR Council, "to amend the FAR to ensure that it contains only provisions that are required by statute or that are otherwise necessary to support simplicity and usability, strengthen the efficacy of the procurement system, or protect economic or national security interests."

19.    To accelerate these sweeping changes, EO 14275 directed the Administrator and the FAR Council to "issue deviation and interim guidance, as appropriate and consistent with applicable law, until final rules reforming the FAR are published." In addition, the Order also directed the Director of the Office of Management and Budget to "issue a memorandum to

agencies that provides guidance regarding implementation of this order" which "shall ensure consistency and alignment of policy objectives and implementation regarding changes to the FAR and agencies' supplemental regulations to the FAR."

20.    On May 2, 2025, Director of the Office of Management and Budget Russell Vought issued Memorandum M-25-26, "Overhauling the Federal Acquisition Regulation," which outlined a two-step process for enacting the RFO.

21.    This Memorandum states that, at Phase I, "FAR Council deviation guidance," the FAR Council would "issue guidance with clear, plain language model deviation text by FAR part, on a rolling basis." While the Memorandum nominally describes a process whereby individual agencies would issue deviations, it makes explicit that agencies were expected to immediately adopt these changes wholesale. The Memorandum specifically directed that "Agencies should generally issue individual or class deviations to implement the FAR Council's deregulated coverage within 30 days after the model deviation text is released."

22.    These model deviations were to be posted to a RFO website by the FAR Council on a Part-by-Part basis alongside "instructions for informal public comment." At this stage, "The FAR Council will not formally respond to the feedback during the deviation guidance phase, but will consider the input, as appropriate, in the formal rulemaking phase."

23.    The Memorandum then identified that formal rulemaking in accordance with 41 U.S.C. § 1707 would follow the issuance of deviations for all FAR parts as Phase II of the RFO.

24.    Throughout 2025, the FAR Council issued class deviations affecting FAR Parts 1 through 53.

25.    In the months immediately following, Agencies followed suit by issuing deviations that implemented the model text of these deviations. GSA issued at least 50 class

deviations adopting the FAR Council's "model text." Substantially all of these deviations, if not all of them, adopted these changes verbatim.

26.    On June 23, 2026, the FAR Council released four proposed rules that sought to implement changes through 19 different FAR Parts, as well as associated Part 52 clauses. While many of the proposed changes in these rules mirror changes in the FAR Council's "model text," not all changes are preserved — for example, while the RFO's deviation to FAR Part 1 includes a "sunset clause" that states that "All FAR sections that are not required by statute must expire 4 years after the effective date of the sections, unless renewed by the Federal Acquisition Regulatory Council," this change is not included in the associated proposed rule.

*Solicitation Background*

27.    Solicitation Number 47QSMD20R0001 is GSA's consolidated Multiple Award Schedule ("MAS") solicitation. The MAS program is the federal government's largest commercial-item acquisition vehicle, through which entities procure commercial products, services, and solutions under pre-negotiated terms and conditions.

28.    Offerings under the MAS are organized into large categories and subcategories and are further identified by Special Item Numbers ("SINs").

29.    The MAS Solicitation is an evergreen, or continuously open, solicitation. It governs the submission of offers, the award of MAS contracts, and the terms applicable to MAS contractors, whose contracts are entered at different times and remain subject to the current version of the Solicitation.

30.    GSA amends the Solicitation from time to time through numbered Refresh modifications. GSA issues each Refresh as a Solicitation-level SF30 published on SAM.gov and

applies the corresponding changes to existing contracts through mass modification. Each Refresh supersedes the prior version, meaning all new offers must conform to the updated version, and the changes are imposed uniformly on the entire body of MAS offerors and contractors.

31.    GSA began to substantially implement RFO deviations into the Solicitation with Refresh 30, issued November 30, 2025. This Refresh added 41 new clauses, updated 18 clauses, and deleted 60 clauses.

32.    On April 2, 2026, GSA released Refresh 31. This refresh implemented a further series of changes to FAR clauses and provisions in accordance with the RFO. It also overhauled the categories of transactional data that contractors were required to report.

33.    On June 8, 2026, GSA released Refresh 32. This modification preserved the RFO implementation and TDR requirements in Refresh 31 and implemented additional RFO changes outlined in GSA Class Deviation RFO-2025-12 Supplement 26-02. This refresh now represents the current version of the Solicitation and includes at least 48 deviated clauses and provisions. The Solicitation does not indicate the total number of clauses that have been deleted through RFO deviations.

*Transactional Data Reporting Requirements*

34.    In 2016, GSA adopted a voluntary transactional data reporting pilot program through notice-and-comment rulemaking. This program would replace existing Commercial Sales Practices (CSP) disclosures for certain SINs in the GSA MAS. This limited scope was intended to "enable GSA to evaluate the effectiveness of Transactional Data Reporting before deciding whether to expand, limit, or discontinue the program."

35. That rulemaking did not provide notice of, or an opportunity to comment on, the mandatory application of TDR to every SIN under the MAS, the elimination of the non-TDR and Commercial Sales Practices alternatives, or the rejection of offers that decline TDR.

36. Throughout the life of the pilot, GSA's own Office of Inspector General repeatedly found that TDR failed to meet those objectives. The Inspector General has reported that the transactional data collected is inaccurate, unreliable, and unusable; that GSA's contracting personnel do not use the data to negotiate or make pricing decisions; and that the program had not been shown to improve pricing or competition.

37. As recently as 2025, the Inspector General found that a substantial majority of the transactional data reported to GSA remained unusable and warned that mandatory, program-wide expansion of TDR could place ordering agencies at greater risk of overpaying for products and services. This report recommended that GSA either ensure the data is accurate and reliable or discontinue the program.

38. On April 2, 2026, GSA released Refresh 31. This Refresh revised the Solicitation's instructions to offerors (SCP-FSS-001) to make Transactional Data Reporting mandatory for all MAS SINs, and provided that all non-TDR and Commercial Sales Practices (CSP-1) references would be removed from the Solicitation.

39. Refresh 31 also expanded the transactional data that contractors must report, requiring contractors to report data categories that were previously optional or not requested. These newly mandatory categories of transactional data include "ship date," "order date," "zip code shipped to," "federal customer/Treasury agency code," "cloud service type," "unique catalog identifier," "order type," "order discount," and "worksite."

40.    Refresh 31's mandatory per-transaction reporting obligation, applied uniformly across every SIN and imposed as a condition of retaining any MAS contract, has no counterpart in the commercial training-services market in which Don Acquisition operates. Commercial sellers of professional and management-development training services do not customarily report unit-level transaction data, including individual order dates, ship dates, delivery zip codes, and federal customer identifying information, to every counterparty in the ordinary course of commercial sales.

41.    The Mandatory TDR Requirements remain in effect in the Solicitation as further amended by Refresh 32.

42.    GSA did not submit the mandatory TDR requirements for public comment in the Federal Register. Instead, GSA posted a draft of Refresh 31 on its Interact portal as a courtesy to industry, allowed only a brief comment window directed to an Agency mailbox, and stated that it would not issue any formal response to industry comments.

43.    The Mandatory TDR Requirements are a discretionary policy choice by GSA. No statute, executive order, or Federal Acquisition Regulation Council issuance requires GSA to make TDR mandatory or to eliminate the non-TDR and CSP-1 alternatives. Unlike other changes GSA has made through the same Refresh mechanism—such as clauses implementing executive orders and the Revolutionary FAR Overhaul—the Mandatory TDR Requirements originate solely in GSA's own program decisions.

44.    The Mandatory TDR Requirements impose significant cost and administrative burdens on offerors and contractors, including the obligation to capture and report transaction-level data for every order across all SINs each month, to report the newly mandated data

elements, and to build and maintain the systems necessary to do so, and they apply across the entire MAS program.

*Don Acquisition's Actions Under the Solicitation*

45.     Don Acquisition is a California-based limited liability company that provides training that instructs procurement professionals on best practices in federal acquisitions. Its offered products include online videos, webinars, and custom courses. Don Acquisition has a history of receiving federal contract awards to provide these services directly to federal agencies, including to both the Department of the Navy and the Centers for Disease Control and Prevention.

46.     Don Acquisition has been forced to shoulder a substantial compliance burden to determine whether and how it is affected by the substantial changes to the Solicitation imposed by Refreshes 30, 31, and 32 to enact the aims of the RFO.

47.     Don Acquisition has sought to compete to provide services under SIN 611TRAINAW, "Defense Acquisition Workforce Improvement Act (DAWIA) and Federal Acquisition Certification in Contracting (FAC-C) Professional Development Training for Acquisition Workforce Personnel."

48.     In order to compete for award under this SIN, Don Acquisition would need to provide "A copy of the DAU Equivalency and/or FAI Verification issued for each course offered."

49.     The requirements to submit a course for DAU equivalency repeatedly emphasize that a course must be "current." The "Equivalent Product Evaluation Sheet" used to assess

courses submitted for approval, for example, asks evaluators to assess whether courses "cite current and applicable DoD doctrine, policies, and regulations as appropriate."

50.     The RFO's considerable changes to the FAR have forced Don Acquisition to entirely overhaul the coursework that it would otherwise have submitted to DAU for equivalency certification.

51.     The FAR Council's issuance of additional deviations demonstrates that Don Acquisition faces the risk that efforts to modify its curriculum and products could be undone by additional changes enacted immediately without the use of advance notice offered through the formal notice and comment rulemaking process.

52.     Because the FAR Council's proposed rules do not mirror the RFO's model deviations, Don Acquisition faces further risk that products that it may develop to reflect the RFO's terms may be superseded by future changes.

53.     Don Acquisition has not otherwise accepted the terms of Refresh 31 or Refresh 32 and is not otherwise already obligated to supply the data required by Refresh 31's Mandatory TDR requirement.

54.     Don Acquisition does not voluntarily supply the data required by Refresh 31's Mandatory TDR requirement.

55.     Don Acquisition would sustain substantial costs and delays to implement the systems necessary to provide mandatory TDR.

## COUNT I

**The RFO Deviations Incorporated Into the Solicitation Were Promulgated Without the Public Notice-and-Comment Rulemaking Required by 41 U.S.C. § 1707.**

56.    Don Acquisition adopts and incorporates by reference the allegations of the preceding paragraphs, as if fully set forth herein.

57.    The RFO deviations incorporated into the Solicitation through Refresh 30, Refresh 31, and Refresh 32 are procurement policies, regulations, procedures, and forms within the meaning of 41 U.S.C. § 1707(a)(1).

58.    As set forth above, the RFO deviations have a significant effect beyond GSA's internal operating procedures and impose a significant cost and administrative impact on contractors and offerors, including Don Acquisition.

59.    Neither the FAR Council nor GSA published the RFO deviations in the Federal Register for public comment before they took effect, as 41 U.S.C. § 1707(a)(1) and (b) require.

60.    No determination has been made that urgent and compelling circumstances make compliance with the notice-and-comment requirements impracticable, 41 U.S.C. § 1707(d), and the RFO deviations are not temporary within the meaning of 41 U.S.C. § 1707(e).

61.    As set forth above, Don Acquisition is prejudiced by these violations: but for the unlawfully promulgated RFO deviations, Don Acquisition would submit a conforming offer under the Solicitation.

62.    The RFO deviations incorporated into the Solicitation are therefore contrary to law and must be set aside.

## COUNT II

### Refresh 31's Mandatory TDR Requirements Were Promulgated Without the Public Notice-and-Comment Rulemaking Required by 41 U.S.C. § 1707.

63.    Don Acquisition adopts and incorporates by reference the allegations of the preceding paragraphs, as if fully set forth herein.

64.    The Mandatory TDR Requirements imposed by Refresh 31 and maintained by Refresh 32 are a procurement policy, regulation, and procedure within the meaning of 41 U.S.C. § 1707(a)(1).

65.    As set forth above, the Mandatory TDR Requirements have a significant effect beyond GSA's internal operating procedures and impose a significant cost and administrative impact on contractors and offerors, including Don Acquisition.

66.    GSA did not publish the Mandatory TDR Requirements in the Federal Register for public comment before they took effect, as 41 U.S.C. § 1707(a)(1) and (b) require. As set forth above, GSA's 2016 rulemaking adopting a voluntary, limited TDR pilot did not provide notice of, or an opportunity to comment on, the Mandatory TDR Requirements.

67.    No determination has been made that urgent and compelling circumstances make compliance with the notice-and-comment requirements impracticable, 41 U.S.C. § 1707(d), and the Mandatory TDR Requirements are not temporary within the meaning of 41 U.S.C. § 1707(e).

68.    The Mandatory TDR Requirements therefore may not be imposed on or enforced against Don Acquisition.

69.    As set forth above, Don Acquisition is prejudiced by these violations: but for the Mandatory TDR Requirements, Don Acquisition would submit a conforming offer under the Solicitation.

70.     The Mandatory TDR Requirements are therefore contrary to law and must be set aside.

## COUNT III

**Refresh 31's Mandatory TDR Requirements Were Promulgated Without the Public Notice Required by the Paperwork Reduction Act.**

71.     Don Acquisition adopts and incorporates by reference the allegations of the preceding paragraphs, as if fully set forth herein.

72.     The Mandatory TDR Requirements imposing identical reporting requirements on ten or more persons are a collection of information within the meaning of the Paperwork Reduction Act, 44 U.S.C. § 3501 et seq.

73.     GSA imposed that collection of information without meeting the requirements of section 3507 of the Paperwork Reduction Act, including publishing the notice in the Federal Register, obtaining the approval of the Office of Management and Budget, or without displaying a valid OMB control number.

74.     Don Acquisition is prejudiced by these violations: but for the Mandatory TDR Requirements, Don Acquisition would submit a conforming offer under the Solicitation.

75.     The Mandatory TDR Requirements are therefore contrary to law and must be set aside.

## COUNT IV

**Refresh 31's Mandatory TDR Requirements Are Inconsistent With Customary Commercial Practice and Were Included Without the Waiver Required by FAR 12.302(c).**

76. Don Acquisition adopts and incorporates by reference the allegations of the preceding paragraphs, as if fully set forth herein.

77. The MAS Solicitation is an acquisition of commercial products and commercial services conducted under FAR Part 12.

78. As set forth above, the Mandatory TDR Requirements are terms and conditions inconsistent with customary commercial practice in the markets in which Don Acquisition operates.

79. GSA did not obtain a waiver approved in accordance with agency procedures, including the determination describing the customary commercial practice and the reasons it is unsuitable, before including the Mandatory TDR Requirements in the Solicitation.

80. As set forth above, Don Acquisition is prejudiced by this violation: but for the Mandatory TDR Requirements, Don Acquisition would submit a conforming offer under the Solicitation.

81. The inclusion of the Mandatory TDR Requirements in the Solicitation therefore violates FAR 12.302(c), is contrary to regulation, and must be set aside.

## COUNT V

**The Agency's Actions Requiring Offerors to Comply with the Mandatory TDR Terms Are Arbitrary, Capricious, and an Abuse of Discretion.**

82.    Don Acquisition adopts and incorporates by reference the allegations of the preceding paragraphs, as if fully set forth herein.

83.    GSA's decision to impose the Mandatory TDR Requirements is final agency action in connection with a procurement and is reviewable under the standards of 5 U.S.C. § 706(2)(A).

84.    GSA failed to consider an important aspect of the problem before it: the evidence in the agency's own record, including repeated findings by its Office of Inspector General, that the transactional data collected under TDR is inaccurate, unreliable, and unused.

85.    GSA's decision runs counter to the evidence before the agency and departs from GSA's prior position, which was that TDR would be expanded only if defined performance metrics were met, without acknowledging that departure or providing a reasoned explanation for it.

86.    GSA eliminated the existing Commercial Sales Practices disclosures and Price Reductions Clause without explaining how the Government's pricing interests would be protected and without considering less burdensome alternatives.

87.    As set forth above, Don Acquisition is prejudiced by this action: but for the Mandatory TDR Requirements, Don Acquisition would submit a conforming offer under the Solicitation.

88.    GSA's imposition of the Mandatory TDR Requirements is therefore arbitrary, capricious, an abuse of discretion, and otherwise contrary to law, and must be set aside.

## COUNT VI

### Don Acquisition is Entitled to Injunctive Relief.

89.     Don Acquisition adopts and incorporates by reference the allegations of the preceding paragraphs, as if fully set forth herein.

90.     The Court should enjoin GSA from enforcing any FAR clause or provision added to the Solicitation as part of GSA class deviations enacting the FAR Council's "Revolutionary FAR Overhaul" draft deviations. Don Acquisition satisfies the four factors necessary for injunctive relief.

91.     First, as addressed herein, Don Acquisition succeeds on the merits.

92.     Second, Don Acquisition will be irreparably harmed if the requested injunction is not granted. GSA's ongoing efforts to rapidly change solicitation terms without first providing advance notice and opportunity to provide comment threatens its ability to prepare and submit its bid. These same threats would also routinely hamper its ability to compete for task orders post-award.

93.     Third, the balance of hardships favors injunctive relief. To the extent the Agency suffers delay or financial consequences from an injunction, these consequences are minimal and of its own making.

94.     Fourth, the public interest weighs in favor of an injunction. The public interest lies in allowing the public the opportunity to prepare for and respond to proposed changes in regulation. These benefits are but part of the reason why Congress and the FAR Council have required that changes to procurement policy be promulgated through the notice and comment process. Further, the public possesses a strong interest in knowing that agencies are bound to comply with the law when they reshape the regulations used to spend public funds.

**PRAYER FOR RELIEF**

WHEREFORE, DON ACQUISITION LLC respectfully requests that this Court:

A.      Declare that GSA's issuance of FAR deviations adopting draft deviation language issued by the FAR Council as part of the "Revolutionary FAR Overhaul" were undertaken contrary to the notice and comment requirements of 41 U.S.C. § 1707;

B.      Declare that GSA's issuance of Refresh 30, Refresh 31, and Refresh 32 that amended, added, and deleted FAR clauses and provisions to reflect the deviated terms set forth by the FAR Council through Phase I of the "Revolutionary FAR Overhaul" was undertaken contrary to the requirements of 41 U.S.C. § 1707;

C.      Declare that GSA's issuance of Refresh 31 that incorporated Mandatory TDR Requirements into the Solicitation was arbitrary, capricious, an abuse of discretion, and otherwise contrary to law;

D.      Permanently enjoin GSA from enforcing any deviation to a FAR clause or provision added to the Solicitation to enact the "Revolutionary FAR Overhaul," unless and until the FAR Council or GSA adopts the text of that deviation in compliance with 41 U.S.C. § 1707;

E.      Permanently enjoin GSA from enforcing the Mandatory TDR Requirements against Don Acquisition, including by rejecting, or requiring the withdrawal of, any offer submitted by Don Acquisition on the ground that it does not comply with the Mandatory TDR Requirements, unless and until GSA adopts those requirements in compliance with 41 U.S.C. § 1707, the Paperwork Reduction Act, and FAR Part 12;

F.      Require GSA to modify the Solicitation to eliminate the unlawful and

unreasonable terms identified above and to provide a reasonable opportunity to

submit offers in response to the amended Solicitation; and

G.      Grant and award to Plaintiff such other and further relief as the Court may deem

necessary, just, and proper.

Respectfully submitted,

*/s/ Marcos Gonzalez*
Marcos Gonzalez
GovSpring Legal PLLC
1707 N St NW Ste 1B
Washington, DC 20036
P: (202)609-7501
E: marcos@govspringlegal.com
*Attorney of Record for*
*Don Acquisition LLC*

July 21, 2026